## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENJAMIN OBUSEK,** | : | **Case No.:**   2:26-cv-00168 |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **RC20, INC. d/b/a #1 COCHRAN** | : | **JURY TRIAL DEMANDED** |
| **AUTOMOTIVE and BODY BY** | : | |
| **COCHRAN; RCVW, INC. d/b/a #1** | : | |
| **COCHRAN COLLISION;** | : | |
| **CRANBERRY COLLISION, LLC d/b/a** | : | |
| **#1 COCHRAN COLLISION;** | : | |
| **NORTH HILLS COLLISION, LLC;** | : | |
| **BOB COCHRAN MOTORS, INC.;** | : | |
| **COCHRAN COLLISION OF** | : | |
| **CRANBERRY, LLC; and** | : | |
| **COCHRAN COLLISION OF** | : | |
| **GREENSBURG, LLC.; MELISSA** | : | |
| **PEDDICORD; and KURTIS** | : | |
| **CLAYPOOLE,** *jointly and severally*, | : | |
| | : | |
| *Defendants*. | : | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Benjamin Obusek, by and through the undersigned counsel,

J.P. Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who files the within

Complaint against Defendants, RC20, Inc. d/b/a #1 Cochran Automotive and Body by Cochran;

RCVW, Inc. d/b/a #1 Cochran Collision; Cranberry Collision, LLC d/b/a #1 Cochran Collision;

North Hills Collision, LLC; Bob Cochran Motors, Inc.; Cochran Collision of Cranberry, LLC;

Cochran Collision of Greensburg, LLC; Melissa Peddicord; and Kurtis Claypoole, jointly and

severally (collectively "Defendants"), of which the following is a statement:

**PARTIES**

1.      Plaintiff, Benjamin Obusek (hereinafter "Plaintiff" or "Mr. Obusek") is an adult individual who currently resides at 105 Park Avenue, Venetia, PA 15367).

2.      Defendant, RC20, Inc. (hereinafter "RC20") is a Pennsylvania business entity with a principal place of business located at 4520 William Penn Highway, Monroeville, PA 15146. RC20 conducts business as #1 Cochran Automotive and Body by Cochran (collectively, the "Cochran Trade Names").

3.      Defendant, RCVW, Inc. (hereinafter "RCVW") is a Pennsylvania business entity with a principal place of business located at 4520 William Penn Highway, Monroeville, PA 15146. RCVW conducts business as #1 Cochran Collision.

4.      Defendant, Cranberry Collision, LLC (hereinafter "Cranberry Collision") is a Pennsylvania limited liability company with a principal place of business located at 4520 William Penn Highway, Monroeville, PA 15146. Cranberry Collision conducts business as #1 Cochran Collision.

5.      Defendant, Cochran Collision of Greensburg, LLC (hereinafter "Cochran Collision of Greensburg") is a Pennsylvania limited liability company with a registered office located at 4520 William Penn Highway, Monroeville, PA 15146.

6.      Defendant, North Hills Collision, LLC (hereinafter "North Hills Collision") is a Pennsylvania limited liability company with a principal place of business located at 1798 Babcock Blvd., Pittsburgh, PA 15209.

7.      Defendant, Bob Cochran Motors, Inc. (hereinafter "Bob Cochran Motors") is a Pennsylvania business corporation with a principal place of business located at 4520 William Penn Highway, Monroeville, PA 15146.

8.      Defendant, Cochran Collision of Cranberry, LLC (hereinafter "Cochran Collision") is a Pennsylvania limited liability company with a principal place of business located at 4520 William Penn Highway, Monroeville, PA 15146.

9.      Defendant, Melissa Peddicord (hereinafter "Ms. Peddicord" or collectively as "Defendants") is an adult individual with a last known address of 9001 Barnes Lake Road, Irwin, PA 15642.

10.     Defendant, Kurtis Claypoole (hereinafter "Mr. Claypoole" or collectively as "Defendants") is an adult individual with a last known address of 210 Ekastown Road, Sarver, PA 16055.

11.     Upon information and belief, the entity Defendants operated together as Plaintiff's employer and/or joint employers under the trade names #1 Cochran Automotive, #1 Cochran Collision, and Body by Cochran, with centralized administration and management functions conducted from the Monroeville address. Plaintiff performed work at collision-center locations branded as "Body by Cochran" and/or "#1 Cochran Collision," including (i) the Pittsburgh worksite located at 1798 Babcock Blvd., Pittsburgh, PA 15209, and (ii) the Greensburg worksite located at 1 Cochran Drive, Greensburg, PA 15601 (the "Greensburg Worksite").

12.     At all relevant times, Ms. Peddicord and Mr. Claypoole acted as employees, managers, and/or agents of one or more entity Defendants within the course and scope of their duties.

**JURISDICTION AND VENUE**

13.     Jurisdiction is proper as Mr. Obusek brings this Complaint in Civil Action of Discrimination under the Uniformed Services Employment and Reemployment Rights Act 38

3

U.S.C. § 4301, *et seq*., ("USERRA"), the Pennsylvania Military Affairs Act, 51 Pa. C.S. § 7309,

("PMAA"), and the Family Medical Leave Act, 29 U.S.C. § 2611 *et seq.* "FMLA").

14.    Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or

omissions giving rise to the claims occurred in Western Pennsylvania, and therefore, this action is

within the jurisdiction of the United States District Court for the Western District of Pennsylvania

and venue is proper pursuant to 28 U.S.C. § 1391(b).

15.    On February 1, 2026, Plaintiff timely dual-filed a Charge of Discrimination withy

the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human

Relations Commission ("PHRC").

16.    Plaintiff intends to amend his Complaint to include claims of discrimination, failure

to accommodate, and retaliation under the ADA and the PHRA against all Defendants once his

claims are administratively discharged.

## FACTUAL ALLEGATIONS

### a.    Mr. Obusek's Military Service

17.    Mr. Obusek enlisted in the United States military in June 2001.

18.    He deployed to Iraq in January 2004 and sustained significant injuries in combat.

19.    Mr. Obusek was later assigned as personal security for the Iraqi Interim President,

and thereafter to the personal security detail for the United Stated Ambassador, both in Baghdad,

where he served until late January 2005.

20.    Upon return from deployment, Mr. Obusek was deemed non-deployable due to a

serious back injury and hearing loss.

### b.    Disabilities, Functional Limitations, and Defendants' Knowledge

21.     Over subsequent years, Mr. Obusek's spinal stenosis progressed, and by approximately 2013 through 2024 he began experiencing episodic paralysis and related functional limitations.

22.     At all times relevant, Defendants knew that Mr. Obusek was a disabled veteran whose orthopedic and spinal conditions substantially limited major life activities, including walking, standing, and prolonged physical exertion.

23.     Throughout his employment, Mr. Obusek consistently disclosed his disabilities when prompted and advised management that certain assignments posed serious health risks.

c.     **Hiring Representations and Employment History**

24.     Mr. Obusek commenced employment with Defendants on August 30, 2024, as a Shop Manager with the express understanding that he would transition into a Divisional/Commercial Development Director role, the position for which he had been recruited and applied.

25.     Defendants repeatedly represented that the commercial division role would materialize in the near term, but it did not do so prior to Mr. Obusek's termination.

26.     Throughout his employment, Mr. Obusek initiated multiple conversations confirming that his role was not intended to remain that of a single-site manager and that he was expected to transition to the commercial division.

27.     Mr. Obusek spoke raised concerns about reassignment due, not only to his relevant prior work experience, but also the daily physical demands required of the Site Manager position which exacerbated the symptoms of his disabilities.

28.     Despite representations from Defendants, Mr. Obusek continued to be assigned to various operational management roles that were physically demanding and markedly different from the position contemplated at hire.

29.     Defendants initially placed Mr. Obusek at the Allegheny Valley facility to shadow operations. Although described as temporary, the placement extended for months.

30.     Defendants later assigned Mr. Obusek to the Cranberry facility to assist with operational stabilization, where he identified systemic issues and improved performance.

31.     Thereafter, Defendants directed that Mr. Obusek assume management of the Greensburg facility effective immediately, significantly increasing his commute and physical workload.

32.     Defendant subsequently assigned Mr. Obusek to the North Hills facility, a site with layout challenges with significantly exacerbated the symptoms of his disabilities.

**d.     Failure to Provide Adequate Training and Support**

33.     Throughout his employment, Defendants failed to provide Mr. Obusek with adequate training necessary to perform the administrative and operational components of his role.

34.     Upon information and belief, Mr. Obusek was not provided access to, training on, or instruction regarding approximately thirteen (13) core platforms, systems, and interfaces routinely used by other managers to complete paperwork, track operations, and ensure administrative compliance.

35.     Approximately six months into employment, Mr. Obusek discovered for the first time that a managers' group text chain existed, despite its relevance to daily operations.

36.     Upon information and belief, Mr. Claypoole failed to ensure Mr. Obusek intentionally hindered Mr. Obusek's job proficiency.

37.     Mr. Obusek requested training, clarification, and support to ensure he could meet Defendants' administrative expectations, particularly as he inherited numerous open files from prior managers and was assigned to struggling facilities.

38.     Other managers were provided training, access, and administrative support and were not disciplined or terminated for comparable paperwork practices.

39.     Upon information and belief, Defendants' failure to provide adequate training and support was motivated, at least in part, by Mr. Obusek's military service, service-connected disabilities, and his repeated requests for accommodation and protected leave.

e.     **Escalating Physical Job Demands and Requests for Reasonable Accommodation**

40.     Throughout his reassignments, Mr. Obusek regularly advised Ms. Peddicord and Mr. Claypoole that the cumulative walking, standing, and physical demands of his assignments exacerbated his disabilities.

41.     Rather than engage in the interactive process, Defendants encouraged Mr. Obusek to "hang in there" and that his position would become easier in time.

42.     With each new reassignment, Mr. Obusek raised concerns about the size of the facility, his physical limitations, and the already compounding effect of continued standing and walking had on his health.

43.     Defendants failed to engage in the interactive process in good faith.

44.     Mr. Obusek requested reassignment to a less physically demanding facility, transitional support, and serious consideration for leadership opportunities.

45.     Defendants failed to meaningfully explore alternative placements, transitional strategies, or duty modifications and instead continued to increase physical expectations.

f.     **Medical Leave Needs and FMLA Requests**

46.    In approximately August 2025, Mr. Obusek consulted with a surgeon regarding bilateral hip replacement, requiring approximately sixteen (16) weeks of recovery.

47.    During this period, Mr. Obusek developed hypertension associated with the stress of continued work demands and uncertainty surrounding his medical condition.

48.    Mr. Obusek requested FMLA paperwork from Human Resources, including from Ms. Peddicord.

49.    It required approximately one month and repeated reminders for Defendant to provide the necessary documentation.

50.    Due to rising hypertension concerns, surgery was temporarily deferred at the recommendation of Mr. Obusek's primary care physician.

51.    By Fall 2025, surgery again became medically necessary, with plans discussed for Spring 2026, as Mr. Obusek's hypertension was monitored and controlled.

52.    Mr. Obusek informed Defendants that he anticipated moving forward with surgery in 2026 and that he anticipated using FMLA leave to assist with the post-surgery recovery.

53.    Thereafter, Defendant knew of this medical necessity but failed to provide meaningful assistance and impeded the leave process by immediately moving to terminate his employment.

g.    **Protected Activity and Retaliatory Termination**

54.    On or about November 7, 2025, Mr. Obusek participated in an in-person meeting with Ms. Peddicord and Mr. Claypoole, during which Defendants raised retention concerns and insisted that Mr. Obusek become "more physically present" at the facility.

55.    During that meeting, Mr. Obusek reiterated that his disability limited prolonged walking and standing and again requested reasonable accommodation.

56.     Mr. Obusek also mentioned an anticipated surgery date in Spring 2026 and his need for leave to recover.

57.     On or about November 11, 2025, Mr. Obusek followed up by email regarding his request for accommodation and associated medical restrictions

58.     Later that same day, on Veteran's Day, November 11, 2025, Defendants terminated Mr. Obusek's employment.

59.     Defendants asserted that the termination was based on alleged paperwork deficiencies.

60.     Upon information and belief, Defendants Claypoole and Peddicord undertook an investigation in an attempt to locate a purportedly legitimate reason to terminate Mr. Obusek's employment following his protected activity during the November 7th meeting.

**h.    Pretext, Disparate Treatment, and Retaliatory Motive**

61.     Prior to discharge, Mr. Obusek had never been warned or disciplined regarding paperwork issues, had repeatedly requested training, and had inherited numerous open files from prior managers.

62.     Defendants failed to equip Mr. Obusek with access or training on approximately thirteen (13) core platforms, systems, and interfaces essential to managerial success.

63.     Defendants also deprived Mr. Obusek of timely access to critical management tools, communication channels, and operational systems required for administrative compliance.

64.     Defendants long emphasized that customer service should take precedence over immediate paperwork completion and routinely instructed that documentation could be reconciled thereafter.

65.     Mr. Obusek reasonably relied on those instructions.

66.     Other managers engaged in comparable documentation practices and were neither disciplined nor terminated; in multiple instances, they were promoted.

67.     Comparator Derek Heinrichs, a manager with a close working relationship with Mr. Claypoole, was advanced and treated more favorably under similar circumstances.

68.     In terminating Mr. Obusek, Defendants departed from its usual practices, selectively enforced policy, and bypassed progressive discipline.

69.     The termination occurred immediately after Mr. Obusek renewed his request for reasonable accommodation and continued discussions regarding FMLA leave.

70.     The close temporal proximity between Mr. Obusek's protected activity and his discharge demonstrates retaliatory motive.

71.     Defendant's stated explanation for termination was inconsistent with historical practice, unsupported by progressive discipline, and pretextual.

72.     Mr. Obusek was terminated not due to paperwork deficiencies or policy violation, but because Defendants refused to accommodate his disability and elected to remove him rather than comply with its legal obligations.

## COUNT I
## DISCRIMINATION IN VIOLATION OF USERRA
## 38 U.S.C. § 4311

### *Plaintiff v. All Defendants, jointly and severally*

73.     Mr. Obusek incorporates by reference the allegations in the paragraphs above as if fully set forth at length herein.

74.    USERRA prohibits an employer from discriminating against an employee with regard to hiring, retention, promotion or any benefit of employment because of an employee's membership in any uniformed service.

75.    An employer violates USERRA if "the person's membership [in the military] is a motivating factor in the employer's action." Murphy v. Radnor Twp., 542 Fed.Appx. 173, 180 (3d Cir. 2013) (citing 38 U.S.C. § 4301(a)(3)).

76.    USERRA provides:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).

77.    The term "employee" means any person employed by an employer. 38 U.S.C. § 4304(3).

78.    "Employer" is defined in the statute as a "person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including (I) a person ... to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4304(4)(A).

79.    Mr. Obusek is a veteran of the United States military who sustained serious injuries during combat deployment in Iraq, including orthopedic and spinal injuries and hearing loss, all of which were known to Defendants.

80.    Defendants are "employers" as defined under USERRA.

81.    Defendants were aware that Mr. Obusek's physical limitations and disabilities were directly attributable to his military service and combat-related injuries.

82.     Despite this knowledge, Defendants assigned Mr. Obusek to a series of increasingly physically demanding operational management roles that exacerbated his service-connected disabilities.

83.     Defendants further failed to advance Mr. Obusek consistent with representations made at hire and instead treated him as a single-site manager subject to heightened physical expectations inconsistent with his military-related limitations.

84.     Upon information and belief, Mr. Obusek's military service and service-connected disabilities were motivating factors in Defendants' decisions to deny him advancement, subject him to adverse treatment, and ultimately terminate his employment.

85.     Defendants terminated Mr. Obusek's employment on November 10, 2025, citing purported paperwork deficiencies that were pretextual and inconsistent with Defendants' historical practices.

86.     As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

87.     As a proximate result of Defendants' conduct, Plaintiff has or will suffer substantial harm, for which Plaintiff seeks general, compensatory, consequential and liquidated damages.

WHEREFORE, Plaintiff, Benjamin Obusek, respectfully requests that this Honorable Court enter judgment in his favor and against all Defendants, jointly and severally, including an award of backpay, front pay, compensatory damages and liquidated damages, costs and attorney's fees, in addition to such other relief as deemed just and proper.

## COUNT II
## DISCRIMINATION IN VIOLATION OF
## THE PENNSYLVANIA MILITARY AFFAIRS ACT
## 51 Pa. C.S. § 7309

### *Plaintiff v. All Defendants, jointly and severally*

88.     Mr. Obusek incorporates by reference the allegations in the paragraphs above as if fully set forth at length herein.

89.     PMAA prohibits an employer from discriminating against an employee with regard to hiring, retention, promotion or any benefit of employment because of an employee's membership in any uniformed service.

90.     Like USERRA, PMAA prohibits discrimination by employers on the basis of military service. Under PMAA,

> [i]t is unlawful for the Commonwealth or any of its departments, boards, commissions, agencies or any political subdivision, or for **any private employer**, to refuse to hire or employ any individual not on extended active duty because of his membership in the [military] ... or **to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment because of such membership**....

51 Pa. Cons. Stat. Ann. § 7309(a) (emphasis added).

91.     PMAA provides that, "[i]t is the intent of this title that it shall be in conformity with all acts and regulations of the United States affecting the same subjects, and all provisions of this title shall be construed to effectuate this purpose." 51 Pa. Cons.Stat. Ann. § 103. Therefore, under PMAA's very terms, the Third Circuit has held that the "PMAA should be interpreted in conformity with USERRA, and we will apply the same two-step burden-shifting framework to claims brought under PMAA as we do to claims under USERRA." Murphy v. Radnor Twp., 542 Fed.Appx. 173, 180 (3d Cir. 2013).

92.     As a veteran of the United States military, Plaintiff is a protected individual under

the PMAA.

93.    The acts and omission by Defendants that are described in this Complaint constitute discrimination in violation of the PMAA.

94.    Defendants' actions were intentional, wanton, and willful, such that punitive damages are warranted.

95.    As a proximate result of Defendants' conduct, Plaintiff has or will suffer substantial harm, for which Plaintiff seeks general, compensatory, consequential, and liquidated damages.

WHEREFORE, Plaintiff, Benjamin Obusek, respectfully requests that this Honorable Court enter judgment in his favor and against all Defendants, jointly and severally, including an award of backpay, front pay, compensatory damages and punitive damages, costs and attorney's fees, in addition to such other relief as deemed just and proper.

## COUNT III
## FAILURE TO ACCOMMODATE SERVICE-CONNECTED DISABILITY
## IN VIOLATION OF USERRA
## 38 U.S.C. § 4313

### *Plaintiff v. All Defendants, jointly and severally*

96.    Mr. Obusek incorporates by reference the allegations in the paragraphs above as if fully set forth at length herein.

97.    USERRA requires employers to make reasonable efforts to accommodate veterans who incur or aggravate a disability during military service and to place such employees in positions of equivalent seniority, status, and pay, or the nearest approximation thereof. 38 U.S.C. § 4313(a)(3).

98.    Mr. Obusek suffers from service-connected disabilities, including spinal stenosis, orthopedic impairments, episodic paralysis, and hearing loss, which substantially limit his ability to perform prolonged walking, standing, and physical exertion.

99.    Defendants were repeatedly advised that Mr. Obusek's physical assignments exacerbated his service-connected conditions and posed serious health risks.

100.    Mr. Obusek requested reasonable accommodation, including reassignment to a less physically demanding facility, transitional support, and consideration for leadership or regional roles consistent with his experience and hiring representations.

101.    Defendants failed to make reasonable efforts to accommodate Mr. Obusek's service-connected disabilities or to place him in an alternative position consistent with USERRA's requirements.

102.    Instead of accommodating Mr. Obusek, Defendants penalized him for limitations directly related to his military service and ultimately terminated his employment.

103.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

104.    As a proximate result of Defendants' conduct, Plaintiff has or will suffer substantial harm, for which Plaintiff seeks general, compensatory, consequential and liquidated damages.

WHEREFORE, Plaintiff, Benjamin Obusek, respectfully requests that this Honorable Court enter judgment in his favor and against all Defendants, jointly and severally, including an award of backpay, front pay, compensatory damages and liquidated damages, costs and attorney's fees, in addition to such other relief as deemed just and proper.

## COUNT IV
## RETALIATION IN VIOLATION OF USERRA
### 38 U.S.C. § 4311(b)

### *Plaintiff v. All Defendants, jointly and severally*

105.    Mr. Obusek incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

106.    USERRA prohibits employers from retaliating against an employee for asserting rights protected under the statute. 38 U.S.C. § 4311(b).

107.    Mr. Obusek engaged in protected activity under USERRA by disclosing his service-connected disabilities, requesting accommodation, and opposing physically unsafe job assignments.

108.    Defendants were aware of Mr. Obusek's protected activity, including his repeated accommodation requests and discussions regarding medical limitations related to his military service.

109.    On or about November 10, 2025, immediately following this protected activity, Defendants terminated Mr. Obusek's employment.

110.    The close temporal proximity between Mr. Obusek's protected activity and his termination establishes a strong inference of retaliatory motive.

111.    Defendants' stated reasons for termination were inconsistent with prior practice, unsupported by progressive discipline, and pretextual.

112.    Defendants' actions constitute unlawful retaliation in violation of USERRA.

113.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

114.    As a proximate result of Defendants' conduct, Plaintiff has or will suffer substantial harm, for which Plaintiff seeks general, compensatory, consequential and liquidated damages.

WHEREFORE, Plaintiff, Benjamin Obusek, respectfully requests that this Honorable Court enter judgment in his favor and against all Defendants, jointly and severally, including an award of backpay, front pay, compensatory damages and liquidated damages, costs and attorney's fees, in addition to such other relief as deemed just and proper.

## COUNT V
## FMLA RETALIATION
## 29 U.S.C. § 2615(a)(2)

### *Plaintiff v. All Defendants, jointly and severally*

115.    Mr. Obusek incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

116.    The FMLA provides in pertinent part: "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

117.    To establish a claim for FMLA retaliation, a plaintiff must show: (1) she invoked her right to FMLA-qualifying leave; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her invocation of rights. *Lichtenstein v. UPMC*, 691 F.3d 294, 301–02 (3d Cir. 2012); *Egan v. Del. River Port Auth.*, 851 F.3d 263, 270 (3d Cir. 2017).

118.    Mr. Obusek engaged in protected activity during the November 7, 2025 meeting with Ms. Peddicord and Mr. Claypoole by invoking FMLA leave protection in anticipation of upcoming surgery.

119.    Defendants subjected Mr. Obusek to adverse employment action by terminating his employment just three (3) days after making the request.

120.    There is a direct causal connection between Mr. Obusek's protected activity and the adverse actions taken against him. The temporal proximity between his request for FMLA leave and Defendants' termination decision, combined with Defendant's pretextual explanations, establish unlawful retaliation.

121.    As a direct and proximate cause of the aforementioned conduct, Mr. Obusek suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

122.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Benjamin Obusek, respectfully requests that this Honorable Court enter judgment in his favor and against all Defendants, jointly and severally, including an award of backpay, front pay, compensatory damages and liquidated damages, costs and attorney's fees, in addition to such other relief as deemed just and proper.

**COUNT VI**
**FMLA INTERFERENCE**
**29 U.S.C. § 2615(a)(1)**

***Plaintiff v. All Defendants, jointly and severally***

123.    Mr. Obusek incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

124.    To make a claim of interference under the FMLA, a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).

125.    Mr. Obusek provided Defendants with notice of his medical condition, anticipated surgery, and intent to use FMLA leave, and requested the necessary FMLA paperwork from Human Resources, including from Ms. Peddicord.

126.    Defendants delayed providing FMLA documentation for approximately one month despite repeated reminders, thereby impeding Mr. Obusek's ability to exercise his FMLA rights.

127.    Defendants further discouraged and interfered with Mr. Obusek's use of FMLA leave by insisting that he become "more physically present" at the facility, before ultimately terminating his employment after he renewed discussions regarding medical leave and recovery.

128.    As a direct and proximate cause of the aforementioned conduct, Mr. Obusek suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

129.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Benjamin Obusek, respectfully requests that this Honorable Court enter judgment in his favor and against all Defendants, jointly and severally, including an award of backpay, front pay, compensatory damages and liquidated damages, costs and attorney's fees, in addition to such other relief as deemed just and proper.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: February 1, 2026                    By: */s/ Justin M. Bahorich*
                                          Justin M. Bahorich, Esq.
                                          Pa. I.D. 329207
                                          The Rubicon Building
                                          201 South Highland Avenue
                                          Suite 201
                                          Pittsburgh, PA 15206
                                          jbahorich@jpward.com

                                          *Counsel for Plaintiff*